Campbell, Sp. J.,
delivered the opinion of the court.
L. P. C. Binford, complainant’s intestate, recovered a judgment at the September Term, 1860, of tbe Circuit Court of Shelby county, against the Memphis Bulletin Company, Joseph R. Mosby, Samuel Bond and David C. Cross, upon a note executed by the *356 Memphis Bulletin Company as principal, and the others as endorsers.
Several executions were issued upon this judgment, but what was done under them does not appear, except that the alias fi. fa. issued November, 19th 1860, was levied upon real estate as the property of defendant Cross, which was sold and the proceeds applied to the payment of costs.
On the 7th of March, 1872, the defendant Joseph R. Mosby, paid to the clerk of the court $2,365.70 in satisfaction of the judgment and interest thereon; whereupon the clerk made the following entry on the execution docket:
“This judgment is satisfied to me by J. R. Mosby, March 7, 1862, and money paid J. H. Unthank at the Fair Grounds. M. D. L. Stewart.”
The defendant Stewart was the clerk of the court; Unthank was attorney of record for the plaintiff in procuring the judgment in the Circuit Court.
Complainant filed the bill in this cause on the 18th of September, 1866, against the defendants in the Circuit Court judgment, except Bond who was dead, together with M. D. L. Stewart the clerk, praying that the satisfaction of the judgment be set aside, or that a decree be rendered here for the money remaining unpaid on the judgment; and for such relief against the defendant Stewart as it may appear to the court the . facts alleged in the bill entitle him to.
*357 The principal ground for relief alleged in the bill is, that the payment by Mosby to the clerk, and by him paid over to the attorney of plaintiff, was made in “Confederate money,” which was not only worthless, but was issued and circulated for an unlawful purpose. The pleadings and proof in the cause render it at least doubtful whether the payment was made in Confederate money, or made in Southern bank-notes, or partly in both. The proof also shows that both kinds of currency were then current, but at considerable discount compared with gold or silver.
It is insisted for the complainant that when it is made to appear that the clerk received anything but gold and silver, or currency convertible into coin at par, it was no satisfaction of the judgment unless the plaintiff authorized payment in depi-eciated currency, or ratified it afterward, and that proof of payment to his attorney and the attorney’s acceptance is not sufficient proof of satisfaction. In other words, that in such cases the principal is not bound by the act of the agent, unless the latter had special authority to receive depreciated currency, or ratified the act afterward, either by receiving it from his agent or by some other positive act on his part. By the act of 1806, ch. 66, sec. 9, which is carried into the Code by see. 4050, the clerk was authorized to receive payment of judgments either before or after executions. Payment to him operates to discharge the judgment. But the payment must be in money; a payment in salt, wheat, choses in action or anything but money is no satisfaction, nor can the agent or attorney of *358 the plaintiff receive anything but money, without authority from him to do so.
The question then arises, what is money? This court, in the case of Crutchfield v. Robins, 5 Hum., 17, said, that “money is a generic term, and covers everything which by consent is made to represent property, and passes as such currently from hand to hand, whether it be the iron of the Spartans, the cowry of the African, the gold and silver of the world, or the paper of modern Europe and America.” So far then as the payment was made in current Southern bank-notes there can be no question in our own State, as to the authority of the clerk to receive it. It is true he might have refused to receive anything but gold and silver at the time, but having received the bank-notes, it was, in the absence of instructions from the plaintiff to the contrary, a satisfaction of the judgment. The proof shows that at the time this payment was made, Confederate money had a very general circulation as currency. At Memphis, when this transaction occurred, it was the chief currency. The banks received it and paid it out to their customers; commerce and trade were carried on with it as a circulating medium. In the language of Judge Turley in the case of 5 Hum. before referred to, it “passed currently from hand to hand.” It therefore was money. But it is insisted that it was not convertible into gold and silver at par, and therefore was not such currency as the clerk was authorized by law to receive. Neither were the bank-notes, nor were United States legal tender or *359 'National bank-notes, which shortly after that time displaced all other kinds of currency convertible into coin at par. If the convertibility of the paper at par be the test of the authority of a sheriff or clerk to receive currency in payment of a judgment or execution, then it would follow that a payment in the notes of any of the old banks when they constituted the chief currency of the country, or at a later day in National bank-notes, when they were worth only fifty cents on the dollar, would be no satisfaction without express authority to receive it, or a subsequent x’atificatiou by the plaintiff. We are to look at things as they existed in March, 1862, not as they are now, or even at the time the bill was filed. At that time an almost unbroken chain of victories had attended the arms of the Confederacy. The hopes and confidence of the people in a successful termination of the war were unabated. Its securities were negotiable at home and abroad. Its Treasury notes became the almost universal medium of commerce and trade among the people, and possessed all the elements of money, as defined by our courts. If it were conceded that nothing is money but what may be converted into gold or silver at par, then no paper currency is money. Under the old banking system, for every dollar in coin owned by the bank, from three to five dollars in notes were put in circulation, so that the paper dollars only represented from twenty to thirty cents in gold. It wms not the repesentative value of the bank-note alone that gave it currency, but the credit given to the bank growing out of the *360 confidence of the public in the successful management of its affairs. This confidence gave a value to the bank-note; frequently far beyond the constituent represented by it, and made it convertible into gold and silver at values proportioned to the public faith. Thus it was Confederate money acquired a circulation, not upon the representative value of it, but growing out of the confidence the people had in the ultimate establishment of a permanent government. It became money, both in a commercial and legal sense, as bank-notes or any other paper currency.
But it is insisted that though a payment of such money to a sheriff with an execution in his hands may be good because he is the agent of the plaintiff, if is different in case of a payment to a clerk, because he is the agent of the judgment debtor until the money is received by the plaintiff. To this we cannot assent. Clerks are no more the agents of one party than they are of the other.
We are therefore of the opinion that whether the payment was made to the clerk in current bank-notes or in Confederate money, if it was made and received in good faith, and without fraud, it was a satisfaction and discharge of the judgment.
As there is nothing in the record indicating fraud on the part of either of the parties, the decree of the Chancellor will be affirmed, the bill dismissed and the complainant required to pay the costs of this court and the court below.